Electronically Filed
Intermediate Court of Appeals
CAAP-13-0001076
28-JUL-2015
10:48 AM

NO. CAAP-13-0001076

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

LAURA LEVI, Petitioner-Appellee,
v.
JOSHUA GORDON, Respondent-Appellant.

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-DA NO. 13-1-0195)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Respondent-Appellant Joshua Gordon (Gordon) appeals from the Order of Protection (Protective Order) entered on May 1, 2013 in the Family Court of the Second Circuit (family court).[1] On April 17, 2013, Petitioner-Appellee Laura Levi (Levi) filed an ex parte petition for a temporary restraining order (TRO) against her ex-boyfriend, Gordon, pursuant to Hawaii Revised Statutes (HRS) Chapter 586. The family court issued a TRO,[2] and conducted an evidentiary hearing on May 1, 2013. The family court entered the Protective Order which ordered Gordon, *inter alia*, to refrain from contacting or threatening Levi, and from coming within 100 yards of her residence.[3] On July 22, 2013, the family court

--------

[1] The Honorable Douglas J. Sameshima presided, unless otherwise noted.

[2] The Honorable Keith E. Tanaka presided.

[3] HRS § 586-5.5 (2006) provides in relevant part:

§ 586-5.5 Protective order; additional orders.
(a) If, after hearing all relevant evidence, the court finds that the respondent has failed to show cause why the order
(continued...)

entered its Findings of Fact and Conclusions of Law (Findings and Conclusions).

On appeal, Gordon contends the family court erred by: (1) finding "physical harm which constitutes family violence under the definition of HRS § 571-2 [(2006)]" as the domestic abuse supporting the Protective Order; (2) determining in Conclusion of Law (COL) 2 that "the imminent threat of physical harm, bodily injury, or assault" was the domestic abuse supporting the Protective Order; (3) finding that the basis for the Protective Order was physical harm, but then relying on a determination of "imminent threat of physical harm" in its COL 2; (4) concluding in COL 2 that there was a past act of domestic abuse; (5) concluding in COL 3 that a protective order was necessary to prevent a recurrence of domestic abuse; (6) relying partially on text messages sent by Gordon to John Hurley (Hurley) in determining there was domestic abuse of Levi; (7) misconstruing Hurley's testimony in its finding of fact (FOF) 11 regarding someone being at Levi's gate area; (8) failing to act fairly in violation of the Revised Code of Judicial Conduct Rule 2.2 by not addressing that Gordon must live at his auto detailing shop due to the Protective Order; (9) failing to act fairly and impartially, and showing bias in favor of Levi; and (10) issuing the Protective Order.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Gordon's points on appeal as follows and affirm.

**Points of error 1-7 and 10.** The family court's determination that there was a threat of imminent physical harm, bodily injury or assault is supported by substantial evidence in

---

[3] (...continued)
        should not be continued and that a protective order is
        necessary to prevent domestic abuse or a recurrence of
        abuse, the court may order that a protective order be issued
        for a further fixed reasonable period as the court deems
        appropriate.

the record, and its conclusion that there was past domestic abuse was therefore correct.

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. . . .
>
> On the other hand, the family court's COLs are reviewed on appeal de novo, under the right/wrong standard. . . .
>
> [T]he question on appeal is whether the record contains "substantial evidence" supporting the family court's determinations, and appellate review is thereby limited to assessing whether those determinations are supported by "credible evidence of sufficient quality and probative value." In this regard, the testimony of a single witness, if found by the trier of fact to have been credible, will suffice.

In re Doe, 95 Hawai'i 183, 190, 196-97, 20 P.3d 616, 623, 629-30 (2001) (citations omitted).

"Domestic abuse" is defined, in part, as "[p]hysical harm, bodily injury, assault, or <u>the threat of imminent physical harm, bodily injury, or assault</u>, extreme psychological abuse or malicious property damage between family or household members[.]" HRS § 586-1 (2006) (emphasis added).[4] In its COL 2, the family court determined that the past act of domestic abuse forming the basis of the Protective Order was "the imminent threat of physical harm, bodily injury or assault." The record supports this conclusion.[5]

The evidence shows that Levi and Gordon dated for several years, and that Gordon moved out of Levi's home when they broke up. Gordon then moved into a house across the street from Levi. In her initial TRO petition, filed on April 17, 2013, Levi asserted two recent incidents of domestic abuse:

> [(1)] 4/16/2013 - I was walking my dog last night right outside of my residence. [Gordon] came up on his motorcycle to turn into the driveway of the house he is staying (right across the street). He sees me and says "I will fuck you up sooner than later."

---

[4] Levi and Gordon fall within the definition of a "family or household member" under HRS § 586-1, which includes persons "formerly residing in the same dwelling unit, and persons who have or have had a dating relationship."

[5] Gordon properly notes that the family court's COL 2 slightly misstates the relevant part of the definition for domestic abuse by misplacing the word "imminent" before the word "threat." However, the family court's ruling is otherwise clear from its Findings and Conclusions, and we see no error in this regard.

> Prior to the police arriving last night, my friend, Johnny, (whom I've asked to please come stay with me) and a neighbor, Donna, we were in the backyard waiting for the police to arrive and he was coming into my side gate, down the pathway to the backyard. Johnny said, "Hey man, what are you doing?" He ran back across the street to the house he is staying when police came. Police went and spoke to him and said he was obviously intoxicated and suggested I file a TRO.
>
> [(2)] 2/16/2013 - I received a threatening e-mail from [Gordon] and called the police. . . .
>
> . . . .
>
> The e-mail reads as [follows]: "The shit is about to begin. We should not speak to each other at all forever" etc. and ended with "This is not over. You should reconsider before I take steps I'm intending."

She also asserted that since Gordon had moved across the street: "I am living in fear of running into him on a daily basis. I feel as though I am being stalked. I have to live with all windows closed and doors locked."

At the May 1, 2013 evidentiary hearing, the family court heard testimony from Levi, Gordon, and Hurley and also received into evidence certain documents, including three email exchanges between Levi and Gordon.[6] Levi testified *inter alia* about Gordon's behavior, stating that although he never hit her, his anger was "extremely, extremely frightening." Levi testified that, with Gordon living across the street, she has a general sense of anxiety and fear and feels uncomfortable going to her mailbox and walking her dog.

Regarding the April 16, 2013 motorcycle incident, Levi testified that she was walking her dog alone at night when Gordon came up to her on his motorcycle and said "I will fuck you up sooner than later." Hurley testified that right after Gordon accosted Levi on the street, Levi came into the house "shaking and sweating" and they immediately called the police. Levi and Hurley testified that, while waiting for the police to arrive, they heard the gate on the side of Levi's residence open. Hurley testified he could not exactly say if it was Gordon, it was dark,

---

[6] Hurley also read two text messages from Gordon out loud during the hearing that are contained in the hearing transcript.

but "there was a body" and Hurley yelled out "hey, what do you want?" Hurley noted that Gordon lived across the street and by the time Hurley got to the gate, Hurley could see someone going up the driveway of Gordon's house, and no one else was around.[7] Gordon, in turn, claimed he was talking to himself out loud when he made a remark on April 16, 2013 while riding his motorcycle up the street,[8] and that no one else was around. However, the family court specifically found that Gordon's account of the incident was not credible and that the testimony of Levi and Hurley was credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation and quotation marks omitted).

Gordon's verbal threat to Levi on April 16, 2013 occurred the same day that he had earlier sent threatening text messages to Hurley.[9] Gordon testified he had learned that morning that Hurley, who he considered a good friend, was now in a relationship with Levi and was moving in with her. Gordon admitted that he sent the texts to Hurley because he was furious at Hurley's betrayal. We reject Gordon's argument that the family court should not have relied on the text messages he sent to Hurley. In FOF 17, the family court found that the text messages to Hurley was evidence that Gordon was angry with Levi and that she was reasonably frightened of him. Gordon does not

---

[7] Gordon contends that there is a significant difference between Hurley's testimony and the family court's FOF 11. Our review of the record establishes that the finding is supported by Hurley's testimony, and thus Gordon's argument is without merit.

[8] Gordon claims that he did not see anyone, but that he saw Hurley's van and said "sooner or later you're going to fuck up."

[9] The first text message sent from Gordon to Hurley on April 16, 2013 read: "You're a fucking piece of shit and I will not let up on this. Stay out of my fucking way. Traitorist self-serving fucking punk. That's you. Come near me . . . ."

The second text message sent from Gordon to Hurley at 8:10 p.m. on that same day read: "You're fucking lucky I don't come over there and drag your fucking ass into the fucking street and give you what you deserve. No threats, promises."

challenge FOF 17 and we are thus bound by it.  See In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002).  Moreover, in the context of this case, the text messages sent by Gordon to Hurley are relevant to show that Gordon's verbal remarks to Levi on the same date were intended as a threat of physical harm.

As for the February 16, 2013 email, Gordon argues that when he wrote "[t]he shit is about to begin[,]" both he and Levi understood that to mean a lawsuit for compensation due him, and that it was not meant as a threat of physical harm.  During the hearing, the family court noted that "[r]egardless of what [Gordon] thinks it's about, petitioner took it in the context that she was being threatened."  Moreover, again, the credibility of the parties is within the province of the family court.

Finally, although we agree with Gordon that in the Protective Order the family court erred in finding "physical harm which constitutes family violence under the definition of HRS § 571-2," the family court ultimately relied on the proper standard under HRS Chapter 586 in its Findings and Conclusions.  Thus, any error was harmless.  Rule 61 of the Hawaiʻi Family Court Rules states:

> **Rule 61 Harmless Error.** No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, <u>unless refusal to take such action appears to the court inconsistent with substantial justice</u>.  The court at every stage of the proceeding <u>must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties</u>.

(Emphasis added.)  In the May 1, 2013 Protective Order, the family court made a finding of physical harm and appears to have relied on standards set forth in HRS § 571-2 under the definition of "family violence."  However, the relevant definition of "domestic abuse" under HRS § 586-1 includes "<u>the threat of imminent physical harm, bodily injury, or assault</u>[.]"  (Emphasis added.)  The family court cited the wrong statute and erroneously made a finding of physical harm in the initial order, but then corrected this error in its subsequent Findings and Conclusions

by relying on the relevant portion of the definition for "domestic abuse" in HRS § 586-1. Because there does not appear to be substantial prejudice to Gordon, see In re Doe, 100 Hawai'i 335, 343, 60 P.3d 285, 293 (2002), the family court's error was harmless.

In sum, we conclude there was substantial evidence that Gordon's conduct constituted an act of domestic abuse. The family court's conclusion that a protective order was necessary to prevent future acts of domestic abuse was supported by its findings, and therefore was not in error.

**Points of error 8 and 9.** Based on our review of the record, we conclude that Gordon's arguments that the family court acted unfairly or showed bias in favor of Levi are without merit.

Levi appeared at the evidentiary hearing *pro se* and the commentary to Rule 2.2 of the Revised Code of Judicial Conduct clearly states that "[it] is not a violation of this Rule for a judge to make reasonable accommodations to ensure pro se litigants the opportunity to have their matters fairly heard." Rule 2.2 cmt. [4]. The family court asked certain questions, but did not do so in an unfair or biased manner.

As to Gordon's argument that the family court terminated Gordon's time to present evidence before he had the opportunity to call a witness, this argument is waived because he did not object when the family court ended the testimony and announced it was ready to rule. Indeed, Gordon's counsel only made brief mention during the evidentiary hearing that Gordon had a witness to testify. Moreover, Gordon's counsel only asserted that the witness could speak to Gordon's character, and there is no indication that the witness could provide evidence about the relevant incidents.

Lastly, Gordon contends that the 100-yard restriction in the Protective Order precludes him from returning to his current residence (across the street from Levi) and that the family court should have at least addressed his housing situation. Gordon does not cite any legal authority indicating that the family court's 100-yard restriction was in error, and we

7

conclude the family court's ruling was not an abuse of its discretion and was not biased. HRS § 586-5.5(a) provides that a protective order may "include all orders stated in the temporary restraining order and may provide for further relief as the court deems necessary to prevent domestic abuse or a recurrence of abuse[.]" (Emphasis added.) See Coyle v. Compton, 85 Hawai'i 197, 207, 940 P.2d 404, 414 (App. 1997) (concluding that HRS Chapter 586 does not unreasonably infringe on a person's freedom of movement); Fisher, 111 Hawai'i at 46, 137 P.3d at 360 ("Generally, the family court possesses wide discretion in making its decisions and those decision will not be set aside unless there is a manifest abuse of discretion." (citation omitted)).

Therefore,

IT IS HEREBY ORDERED that the Order for Protection entered on May 1, 2013 in the Family Court of the Second Circuit is affirmed.

DATED: Honolulu, Hawai'i, July 28, 2015.

On the briefs:

Valentina Stewart Watson
(Law Office of
 Valentina Stewart Watson, Inc.)
for Defendant-Appellant

Presiding Judge

Associate Judge

Associate Judge

8